ABRAM B. WRIGHT v. SYLVESTER STARKS.

77  221
115  463
77  221
120  202

*Chattel mortgages—Ownership of mortgaged property—Evidence—
Trover—Charge to jury.*

1. A mortgagee of chattels may maintain trover against any person wrongfully interfering with his right to their possession, even before condition broken. *Grove v. Wise*, 39 Mich. 163; *Harvey v. McAdams*, 32 Id. 473.

2. The questions involved in this case are so intimately connected with the facts, as stated in the opinion, that an examination of the opinion is essential to their correct understanding, and it is not deemed desirable to embody them in head-notes.

Error to Ingham. (Gridley, J.)  Argued June 6, 1889. Decided November 1, 1889.

Trover.  Plaintiff brings error.  Reversed.  The facts are stated in the opinion.

*Smith & York* (*S. L. Kilbourne*, of counsel), for appellant.

*E. D. Lewis* (*R. A. Montgomery*, of counsel), for defendant.

[The points of counsel are stated in the opinion.— REPORTER.]

SHERWOOD, C. J.   This is an action of trover, to recover for a flock of sheep alleged to have been converted by the defendant.   The case was tried in the Ingham circuit, before Judge Gridley, by jury, and the defendant prevailed.   The plaintiff brings the case to this Court, and assigns 12 allegations of error.

The circumstances of the case, as the record presents them, are as follows:   The parties to the suit were two

neighbors, living near each other, and both were farming in Ingham county. In December, 1880, defendant, on account of failing health, went to Florida, leaving his farm, farming implements and stock in the care and charge of his three sons, George, Hiram, and Ellsworth; George being the only one of age at the time. The three sons carried on the farm until defendant came home, in May, 1881. With a view of returning to Florida to live at this time, he sold his farm to his three sons, together with the personal property thereon, by contract, under which each son was to have an undivided third. The sons were all living upon the farm at the time. In the fall of 1881 defendant returned to Florida, and did not visit Michigan again until the summer of 1883.

In the fall George bought of the plaintiff 77 sheep, at an agreed price of $167, and gave his note therefor, due in June following. George failed to pay this note when it became due, and it was allowed to run until October 21, 1884, at which time he gave a chattel mortgage on 170 sheep, which were then upon the farm (and George was then living upon the same), to secure the payment of the amount due on the note at that time,—$179.97; the mortgage covering, as claimed, the same sheep purchased of plaintiff, and their increase, and a small flock purchased by George and put with the others upon the farm. The mortgage was duly filed on October 22, the day after it was given, and was made payable on or before June 15, 1885.

The defendant came to Michigan in the summer of 1884, and found things not agreeable among the boys on the farm. Hiram and Ellsworth were not satisfied with the management of George; and it is claimed by the defendant that he bought all of George's interest in the farm and the personal property thereon on August 2, 1884; that he paid George $500 therefor, and gave his

note for the same, due in two years, and took an assign-
ment from George as follows:

"LEROY, August 2, 1884.
"Assigned all my right and title over to Sylvester
Starks that I have in this contract, and he, the said
Sylvester Starks, agrees to pay me $500 for the same.
"GEORGE W. STARKS. [L. S.]"

The note was offered in evidence, signed by Sylvester
Starks, of the date, amount, tenor, and effect above
stated.

It appears further from the testimony that after this
assignment George was not at home much of the time
that summer, but was at different places about the State;
and that in the forepart of October, 1884, Sylvester
Starks transferred his interest in the farm to Hiram and
Ellsworth; that defendant returned to Ingham county
again about the time the mortgage became due, and at
which time plaintiff saw him, and had a conversation
with him about the sheep and mortgage, in which plaint-
iff says defendant told him he owned the sheep; said
George had no right to mortgage them when he did;
that after the mortgage became due plaintiff went to the
farm to get his pay, or the sheep mortgaged, and defend-
ant forbade his taking the sheep; that plaintiff then sent
a constable to take them under his mortgage, and defend-
ant again refused to allow them to be taken; and he
then brought this suit to recover their value.

The case is somewhat peculiar upon the testimony. It
is not entirely free from difficulties, as presented. It
presents some equitable features which cannot well be
entirely left out of the consideration to be given to it.
The plaintiff claims the debt he seeks to recover was
known to the defendant and his three sons; and in what-
ever dealings he had with either of them, if their testi-
mony is to receive credence, each have had the benefit

of his property, to a certain extent at least, for which he has never held or had anything but George's note, or note and mortgage; and that the property he let George have, with all of its increase, has never been out of the possession of Sylvester, or one or more of his sons. When George bought the sheep of plaintiff, so far as the record shows, he bought them for himself; and George, in his bill of sale to his father, does not appear to have included these sheep, and down to the time George left the premises he never claimed to the plaintiff that he had sold them, or any interest in them, to any one; and when he gave the chattel mortgage to plaintiff, which was several weeks after the defendant claims he bought them of George, and after the bill of sale was dated, he says in it, the sheep "are free and clear from all liens, conveyances, incumbrances, and levies," and he further authorized plaintiff, at any time when he should deem himself insecure, to take possession thereof. George told the draughtsman who filled out the mortgage, at the time it was made, that the mortgaged sheep were his; and there was testimony in the case that defendant, after the mortgage was given, said he had nothing to do with the sheep, and that he offered to give the plaintiff a note, which defendant claimed was good, of $150, on the plaintiff's debt.

There was also some testimony given tending to show that the sale of the sheep to the father by George was not a *bona fide* sale, and that plaintiff knew nothing of the sale until after he had brought this suit, and that George made his home upon the farm with his brothers until after the mortgage was given. There was also testimony given tending to show that, while George purchased all the mortgaged property, still his interest therein was but an undivided one-third thereof.

There were no special findings by the jury, but the verdict was general for the defendant.

With a single exception, the questions presented by the exceptions all refer to the instructions given or refused by the court in making his charge to the jury.

The testimony ruled in the case against objection of plaintiff's counsel relates to what was said and done at the time defendant offered, as he says, to pay the plaintiff a good note on George's indebtedness for the sheep,— whether the note was good or bad. The objection was that it was immaterial. I do not think the testimony was material. The defendant did not claim that he owed George anything for which he was. authorized to make payment on the note for George, and the plaintiff did not claim any original liability on the part of defendant to make payment for the sheep. The plaintiff's claim against defendant was that defendant refused to let plaintiff have the property when he was entitled to the possession under his chattel mortgage.

At first view, it would seem the error was a harmless one. A few moments' consideration, however, leads to a different . conclusion. The first impression is that the offer of the note to pay for the sheep would only show an equitable obligation on the part of defendant to pay for the property, for which George was liable, but this would not raise the legal liability to pay under the mortgage, which was the plaintiff's only claim for the money, and the foundation of his interest in the sheep, and his right to their possession; and, while the testimony went to support defendant's theory of ownership of the property, it was entirely inconsistent with all of the plaintiff's rights under his theory to make his money out of the property, and was serious error to the plaintiff's case, and the testimony should have been excluded.

It was the theory of the plaintiff that George was the owner of the property when the mortgage was made; that it was made to secure an honest indebtedness of George; and that the interest claimed by his brothers was only a pretense, and that the claimed ownership of the defendant was only a sham and a fraud; and this theory was strongly urged to the jury by learned counsel for the plaintiff. There was testimony in the case tending to establish each of these positions, and the plaintiff had the right to have the case go to the jury upon his theory, as well as upon the theory of the defendant; and, had this been done, the verdict would have been final in the case.

It was claimed by the defendant no demand was made for the sheep after the mortgage became due. The plaintiff could only recover upon his theory of the case, and, under that, the demand testified to by plaintiff and his witnesses was sufficient, as against the defendant, if made before or after the mortgage became due. The original note was given up when the mortgage was taken, and George's promise to pay was contained in the mortgage.

" A mortgagee of chattels may maintain trover against any person wrongfully interfering with his right to the possession of the mortgaged property, even before condition broken." *Grove v. Wise*, 39 Mich. 163; *Harvey v. McAdams*, 32 Id. 473.

Under the theory of the plaintiff, the oldest son, George, was the owner of the property when he gave the mortgage, and the defendant and the other two sons were fraudulently making claim thereto, and the defendant, under the circumstances, stood in no more favorable position than he would if he had been a stranger to the property claiming to own it, and when plaintiff attempted to

assert his rights, he found himself confronted by defendant, who threatened to protect his possession under his pretended title by the use of arms, if necessary; and this theory of plaintiff found support in the testimony he put into the case, and the court should have charged the law applicable to such a case, and directed the jury to apply it if they found such facts to exist.

The plaintiff's first, second, and third requests should have been given as requested.   They are as follows:

"1. No question is made in this case but that the chattel mortgage, when given, was valid to incumber all the right, title, and interest which George W. Starks had in the sheep at the time it was given, and that the mortgage was duly recorded so as to protect the plaintiff in all his rights under it against all subsequent purchasers.

"2. If the jury find that George W. Starks was the owner of, or had any interest in, the sheep at the time the mortgage was given, and the defendant prevented the plaintiff from taking the sheep, or foreclosing his mortgage after it became due, in the manner claimed by the plaintiff, then the plaintiff is entitled to recover the amount or the value of the interest George had in the sheep, to the full amount of the chattel mortgage, and interest thereon.

"3. Unless the alleged sale of the sheep by George to his father, in August, 1884, was accompanied by an immediate delivery, and was followed by the actual and continued change of possession of the sheep, such sale was presumptively fraudulent and void as against the plaintiff, and is conclusive evidence of fraud, unless it is made to appear on the part of the defendant that the sale was made in good faith, and without any intention to defraud the plaintiff, or any other creditor of George W. Starks."

Instead of giving these, or either of them, the court refused them all, and, in referring to the last, told the jury that when plaintiff surrendered up the note he took for the sheep, and received in its stead the chattel mortgage, he ceased to be a creditor of George within the statute.   This was error.   The mortgage contains an

express promise of the mortgagor to pay the debt, and it appears without any contradiction that. the plaintiff at all times held George's express promise to pay for the sheep plaintiff sold to him.

The plaintiff's fourth, fifth, and sixth requests were properly refused, except as given. in the general charge.

Several other questions are raised upon the record, and referred to in the assignment of errors, principally relating to the charge as given, which we do not think it necessary or profitable to discuss, as under the views herein expressed there is no probability they will recur upon a retrial of the case; but for the errors mentioned a reversal must be had, and a new trial granted

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred.